**Donald D. WADE, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary United States Department of Health and Human Services, Defendant.**

Civ. No. 87–0099 P.

United States District Court, D. Maine.

Nov. 10, 1987.

4

Stephen T. Wade, Auburn, Me., for plaintiff.

John F. Aronson, Asst. Regional Counsel, Boston, Mass., David R. Collins, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

This action is brought pursuant to the Age Discrimination Employment Act (ADEA, "the Act"), 29 U.S.C. § 621, *et seq.* Plaintiff Donald Wade was employed at the United States Department of Health and Human Services (DHHS), Social Security Administration, and alleges that he was not selected for a higher grade position as District Manager because of his age.

Currently before the Court is the Government's motion to dismiss for Plaintiff's failure to exhaust administrative remedies. The central issue to be decided is whether a federal employee who first files a formal complaint with the EEOC under § 15(b) of the ADEA, 29 U.S.C. § 633a(b), must exhaust all administrative remedies prior to filing civil action in district court under § 15(c), (d). Secondary to that issue is what action by the federal court is required if it is found that § 15 does not provide for such simultaneous administrative and civil filings.

Under the ADEA, a federal employee is afforded two alternative avenues of relief for acts of age discrimination. An employee may choose to pursue an administrative remedy by filing a formal complaint with the EEOC and, if relief is denied, the employee may then institute a civil action in federal court. 29 U.S.C. § 633a(b), (c); *see Ray v. Nimmo,* 704 F.2d 1480, 1483 (11th Cir.1983). Alternatively, a federal employee may proceed directly to federal court, provided that the civil suit is commenced within 180 days of the alleged discriminatory act, and provided that the EEOC is given at least 30 days prior notice of the intention to sue. 29 U.S.C. § 633a(d).[1]

In the present case, Plaintiff pursued both avenues of relief simultaneously. He first filed a formal complaint with the EEOC in January, 1987. A civil action was commenced in this Court some sixty days later in March, 1987. Plaintiff's civil action was commenced before any administrative determination had been reached and before the lapse of the 180-day period the agency has set as a guideline for administrative resolution. *See* 29 C.F.R. §§ 1613.511, 1613.220.[2]

 The Court is satisfied that an ADEA claimant who first chooses the alternative of an administrative remedy must ordinarily exhaust that remedy before filing a civil action. In *Castro v. United States,* 775 F.2d 399 (1st Cir.1985), the First Circuit stated that "to allow [a plaintiff] to initiate a civil action after abandoning the administrative remedies he had chosen to pursue is inconsistent with one of the central objectives of § 633a; namely, to encourage mediation or conciliation so as to render a civil action unnecessary." *Id.* at 404, *citing Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir.1981). As this Court suggested in dictum in *Shostak v. United States Postal Service,* 655 F.Supp. 764 (D.Me.1987), however, exhaustion of administrative remedies is a flexible doctrine whose supportive rationale may not be persuasive in the circumstances of every case. *Id.* at 765 n. 1; *see also Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 774 (1st Cir. 1981). Exhaustion of administrative remedies under the ADEA is not a jurisdictional requirement but a requirement subject to waiver, estoppel, and equitable tolling. *See Williams v. Casey,* 657 F.Supp. 921 (S.D.N.Y.1987), *citing Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed. 2d 234 (1982) (timely compliance with administrative filing deadlines in Title VII was not a jurisdictional prerequisite to suit in federal court).[3] Although exhaustion of administrative remedies is ordinarily required of federal employees once they file complaint with the EEOC, it would not be consistent with the purposes and intent of

---

1. Defendant has asked for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, arguing that because Plaintiff failed to specifically plead the fact that the EEOC had been given the required 30 day prior notice, his complaint failed to state a cause of action. Defendant admits, however, that timely notice was in fact given. Because notice of intent to sue is not a jurisdictional requirement and is subject to modification or excuse for equitable reasons, *see Patterson v. Weinberger,* 644 F.2d 521, 524 (5th Cir.1981), this Court does not find it an equitable solution to dismiss a claim outright for failure to specifically plead notice actually given. The Court would normally allow Plaintiff to amend his pleading. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

2. Section 1613.511 directs the Agency to provide regulations for the processing of complaints of age discrimination which "comply with the principles and requirements in §§ 1613.213 through 1613.222...."

Section 1613.220 of the EEOC regulations reads in pertinent part:

*Avoidance of Delay*

(a) The complaint shall be resolved promptly. To this end, both the complainant and the agency shall proceed with the complaint without undue delay so that the complaint is resolved within 180 calendar days after it was filed, including time spent in the processing of the complaint by the Administrative Judge under § 1613.218.

3. *See also Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d at 774 n. 4 (First Circuit applied "exhaustion" doctrine rather than "primary jurisdiction" doctrine in affirming dismissal of claim under Education for All Handicapped Children Act); *cf. Bertrand v. Orkin Exterminating Co. Inc.,* 419 F.Supp. 1123, 1126 (N.D.Ill. 1976) (court found persuasive the argument that § 14(b) of the ADEA does not mandate resort by [nonfederal] employees to state procedures as a jurisdictional prerequisite).

the Act to deny a claimant access to federal courts indefinitely once he chooses an administrative route that does not provide timely resolution. Exhaustion of administrative remedies once a § 15(b) filing is made is not an absolute requirement. *See Taylor v. Marsh,* 624 F.Supp. 1042, 1044 (D.Mass.1985). The exhaustion requirement should not be rigidly applied once an administrative remedy is sought under § 15(b), but rather should be applied where it would not be inconsistent with the purposes behind the Act.

The Court finds support for this position in the United States Supreme Court case of *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). That case involved the interpretation of section 14(b) of the ADEA, 29 U.S.C. § 633, which requires that grievants (nonfederal employees) resort to state administrative remedies in deferral states[4] 60 days prior to commencing civil action in federal court. The Supreme Court held that resort to state administrative remedies is mandatory under section 14(b), and that the fact that grievants could file with state and federal agencies simultaneously did not obviate the statutory requirement that states be allowed at least a 60–day period to solve problems of discrimination prior to the commencement of federal litigation:

> The ADEA permits concurrent rather than sequential state and federal administrative jurisdiction in order to expedite the processing of age-discrimination claims. The premise for this difference is that the delay inherent in sequential jurisdiction is particularly prejudicial to the rights of "older citizens to whom, by definition, relatively few productive years are left." 113 Cong.Rec. 7076 (1976) (remarks of Sen. Javits).

*Oscar Mayer & Co.,* at 757, 99 S.Ct. at 2072.

The Supreme Court also held, however, that failure to comply with time limits spec-

ified by state law would not prevent a claimant from seeking federal relief:

> [Section 14(b)] is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief. Individuals should not be penalized if States decline, for whatever reason, to take advantage of these opportunities.... Congress did not intend to foreclose federal relief simply because state relief was also foreclosed.

*Id.* at 761, 99 S.Ct. at 2074.

Although the present action involves a slightly different statutory scheme for federal employees under the ADEA, 29 U.S.C. § 633a, the Supreme Court's reasoning in *Oscar Mayer* applies. Like the statutory scheme for nonfederal employees, § 15(b) encourages administrative resolution prior to the institution of a federal suit.[5] Although one of the purposes of § 15(b) is to screen from the federal courts those discrimination complaints that could be resolved through mediation and conciliation, it also was certainly Congress' intent to expedite the processing of age-discrimination complaints for older citizens for whom time is of the greatest significance. *Oscar Mayer,* 441 U.S. at 757, 99 S.Ct. at 2072. It is from a balancing of these two interests that a reasonable construction of § 15 is derived.

In accordance with the First Circuit's opinion in *Castro v. United States,* 775 F.2d at 404, this Court finds that § 15, by its terms, does not provide for concurrent federal administrative and federal court jurisdiction. Ordinarily, a federal employee choosing to pursue an administrative remedy must exhaust that remedy before filing a civil action in federal court. It would be inconsistent with the overall purpose of the ADEA, however, to foreclose federal litigation to federal employees who

---

**4.** Deferral states are those states having "a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice." 29 U.S.C. § 633(b).

**5.** Unlike § 14(b), however, § 15 does not prescribe a specific day limit after which an employee filing an administrative complaint may then file a civil action in federal court, nor does it explicitly state an exhaustion requirement.

initially seek administrative action, but for whom such action is unreasonably delayed because of internal agency problems. It was not Congress' intent that employees seeking mediation and conciliation through administrative channels be penalized for choosing that alternative. One of the purposes behind § 15(b) was to encourage settlement of grievances through administrative channels. A policy that irrevocably locks those seeking administrative relief into those channels—no matter the time required—would substantially chill the likelihood that future litigants would seek that alternative remedy. In addition, a delay of one or two years may, in effect, be a denial of relief to older employees who have fewer productive years left in federal employment. It would be inconsistent with Congressional intent to deny effective relief to federal employees who initialy seek administrative resolution, merely because the administrative agency, by its inaction, defaults on its responsibility to provide expeditious resolution. Although a federal employee must ordinarily exhaust administrative remedies once a formal complaint is filed, there are instances where application of the exhaustion doctrine would only serve to impede, not further, the purposes behind the ADEA. As the First Circuit has stated, the exhaustion doctrine is not to be applied inflexibly, "and courts are free to use their discretion ... applying the doctrine, or not, in accordance with its pur-

poses." *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 774.

■ Having found that exhaustion of administrative remedies under section 15(b) is not a jurisdictional requirement, and having found that there are instances where the exhaustion doctrine is not appropriately applied, it remains to be determined whether the doctrine should be enforced in this case. The Court finds that it is appropriately applied to the facts of this case, but that rather than dismissal of Plaintiff's complaint outright, a stay of further court proceedings is warranted pending report of counsel.

■ Plaintiff waited less than approximately seventy days after filing with the EEOC before filing a civil action in this Court. This hardly gave the agency an adequate opportunity to act on the complaint. At a minimum, the agency should be allowed at least the 180 days its regulations designate as a time limit for the resolution of complaints.[6] Dismissal would ordinarily be appropriate under these circumstances.

It has now been ten months since a formal complaint was filed with the EEOC, well over the 180 day period ADEA regulations prescribe as a time limit for the administrative resolution of complaints. All indications to the Court suggest that a final decision may not be forthcoming for over a year.[7] As previously noted, Con-

---

6. Plaintiff argues that, even if § 15 does not provide for simultaneous filing of administrative and federal court complaints, he should be excused from the exhaustion requirement because a DHHS agent told him that simultaneous filing was permitted. This claim is not appropriately considered under the doctrine of waiver, for waiver involves the voluntary relinquishment of a known right. Plaintiff does not maintain that the DHHS agent knew of any right to require exhaustion of administrative remedies. Estoppel is a more appropriate doctrine given these facts. *See Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (estoppel is an equitable doctrine requiring reliance on an adversary's conduct that is both detrimental to the party's position and reasonable under the circumstances). The Court is not satisfied that statements made by an Equal Opportunity Manager for the DHHS during a counseling session, even if misleading, are sufficient to estop the Government from

raising the exhaustion doctrine as a defense. The Court has asked for affidavits from the parties attending the November, 1986, counseling session and, at best, they provide conflicting accounts of the proceedings. In any event, Plaintiff was represented by counsel at that meeting, and any misleading statements—if made—can not be said to have been "reasonably" relied on. A brief review of existing case law would have found that the First Circuit has spoken very recently on the general policy that administrative remedies ought be exhausted once a formal complaint is filed under section 15(b). *Castro v. United States*, 775 F.2d 399 (1st Cir.1985).

7. Although the formal administrative complaint was filed on January 6, 1987, it was not acknowledged until April 24 by telephone call. By June 17, 1987, an investigator had yet to be assigned to the case. A recent published report

gress was particularly aware of the severe prejudice that unnecessary delay could cause older citizens filing age discrimination complaints. To avoid further unnecessary delay, the Court will not dismiss the present complaint for failure to exhaust administrative remedies. Both in the interests of judicial economy and in furtherance of the purposes behind the ADEA, the Court finds that a stay of further proceedings is a more appropriate action under these circumstances. The Court will stay further proceedings herein until January 4, 1988, and will await report from counsel on what, if any, agency action has been taken up to that time. If there has been no decision, or none is immediately forthcoming, the Court will then schedule the case for trial. This procedure will allow adequate time for mediation and conciliation. At that point, administrative delay may well prejudice Plaintiff's right to effective, expedient action on his age discrimination claim.

\*　\*　\*　\*　\*　\*

Accordingly, it is hereby ORDERED that:

1) Defendant's Motion to Dismiss for Failure to Exhaust Administrative Remedies be, and hereby is, DENIED;

2) Further proceedings are hereby STAYED to January 4, 1988; and

3) Defendant shall report to this Court by January 4, 1988, what action has been taken by the EEOC as of that time, and if any decision has been made or is impending.

indicated that it takes on the average 591 days to decide a case before it reaches the EEOC hearing stage. The Gov't. Mngr. (BNA), No. 360, Oct. 13, 1986, p. 1.